COOLEY LLP
HEIDI KEEFE (178960)
(hkeefe@cooley.com)
LOWELL MEAD (223989)
(lmead@cooley.com)
PRIYA VISWANATH (238089)
(pviswanath@cooley.com)
ALLIE DUNWORTH LEEPER (307310)
(aleeper@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

COOLEY LLP
PHILLIP MORTON (*Pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania Avenue
NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile:    (202) 842-7899

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| YANBIN YU and ZHONGXUAN ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California Corporation,<br><br>Defendant. | Case No.  3:18-cv-06181-JD<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        February 21, 2019<br>Time:        10 a.m.<br>Courtroom: Courtroom 11, 19th Floor<br>Judge:       Hon. James Donato<br>Trial Date:  Not yet set<br><br>Complaint filed:  October 9, 2018 |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  THE ASSERTED CLAIMS OF THE '289 PATENT ARE INVALID UNDER § 101. ........ 2

    A.   Statement of Facts ............................................................................................ 2

        1.   The Asserted Claims recite a system for enhancing an image using conventional components ................................................................................ 2

        2.   The specification confirms that the alleged invention is merely an idea. ........ 4

        3.   The prosecution history further confirms ineligibility. ................................... 5

    B.   Legal Standard ................................................................................................ 7

    C.   The Asserted Claims Do Not Recite Patent-Eligible Subject Matter. ........................ 8

        1.   *Alice* Step 1 – the Asserted Claims are directed to an abstract idea. ............... 8

        2.   *Alice* Step 2 – the Asserted Claims recite no inventive concept. ................... 10

III. THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD WILLFUL INFRINGEMENT ................................................................................................ 11

    A.   Legal Standards ................................................................................................ 11

    B.   Summary of Allegations in the Complaint Regarding Alleged Willfulness .............. 12

    C.   Plaintiffs' Willful Infringement Claim Fails Because The Complaint Does Not Allege Specific Factual Allegations Plausibly Showing Egregious Misconduct ...... 13

IV.  CONCLUSION ................................................................................................ 15

**APPLE'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016)...........................................................................................9

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)...........................................................................................3

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014)..................................................................................................... *passim*

*Apple Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016)......................................................................................9, 10

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)..........................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................12

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
723 F. App'x 989 (Fed. Cir. 2018) ......................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................7, 11, 15

*Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*,
No. 14-6650, 2015 WL 3755223 (E.D. Pa. June 15, 2015)...............................................13

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)..........................................................................................10

*CG Tech. Dev., LLC v. Zynga, Inc.*,
No. 2:16-cv-00859-RCJ-VCF, 2017 WL 662489 (D. Nev. Feb. 17, 2017) ......................12

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
No. 11-cv-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) ..................................14

*Coinstar, Inc. v. Coinbank Automated Sys., Inc.*,
998 F. Supp. 1109 (N.D. Cal. 1998) ....................................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)........................................................................................8, 9

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)..........................................................................................10

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)..........................................................................................10

**APPLE'S MOTION TO DISMISS**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Finjan, Inc., v. Cisco Sys., Inc.*,
No. 17-cv-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ....................................12, 15

*Gottschalk v. Benson*,
409 U.S. 63 (1972)..................................................................................................................7

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
136 S. Ct. 1923 (2016) .................................................................................................. *passim*

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)................................................................................3, 8, 10

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017).................................................................................................8

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015).............................................................................................10

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)...........................................................................................7, 9

*IPLearn-Focus, LLC v. Microsoft Corp.*,
No. 14-cv-00151-JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015)...................................9

*Maxon, LLC v. Funai Corp.*,
726 F. App'x 797 (Fed. Cir. 2018) .........................................................................................7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)..................................................................................................................7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)............................................................................................10

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) .....................................................................................7

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)..........................................................................................6, 8

*Radware, Ltd. v. F5 Networks, Inc.*,
No. 5:13-cv-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016)...................................13

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017).................................................................................................8

*SAP Am., Inc. v. Investpic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)..........................................................................................7, 11

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
No. 13-cv-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017)....................................14

**APPLE'S MOTION TO DISMISS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Spherix Inc. v. Juniper Networks, Inc.*,
No. 14-cv-578-SLR, 2015 WL 1517508 (D. Del. Mar. 31, 2015) ..................................................14

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
897 F.2d 511 (Fed. Cir. 1990)....................................................................................................7

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016).................................................................................................8, 9

*TriDim Innovations LLC v. Amazon.com, Inc.*,
207 F. Supp. 3d 1073 (N.D. Cal. 2016) ..................................................................................9, 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)..............................................................................................4, 10

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..............................................................7, 8

*Varian Med. Sys., Inc. v. Elekta AB*,
No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016)........................................................12

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017)....................................................................................................10

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
887 F.3d 1376 (Fed. Cir. 2018)......................................................................................................7

*Windy City Innovations, LLC v. Microsoft Corp.*,
193 F. Supp. 3d 1109 (N.D. Cal. 2016) ........................................................................................11

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
No. 17-cv-03848-RS, 2017 WL 4551519 (N.D. Cal. Oct. 11, 2017) ..........................................14

**Statutes**

35 U.S.C. § 101.............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P.
12................................................................................................................................................7
12(b)(6) ............................................................................................................................1, 3, 7, 11

Fed. R. Evid. 201 ........................................................................................................................7

**APPLE'S MOTION TO DISMISS**

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 21, 2019 at 10 a.m., in Courtroom 11, 19th Floor, United States District Court for the Northern District of California before the Honorable James Donato, Defendant Apple Inc. ("Apple") shall move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Complaint (ECF No. 1, "Compl.") with prejudice for failure to state a claim upon which relief can be granted. The asserted claims of U.S. Patent No. 6,611,289 (the "'289 patent") (Compl., Ex. A) are invalid, because they recite patent-ineligible subject matter under 35 U.S.C. § 101. In addition, the Complaint fails to allege facts sufficient to state a claim for willful patent infringement. This motion is based on the following Memorandum of Points and Authorities, the pleadings on file in this action, matters of which the Court may take judicial notice, and upon such other and further argument and evidence as the Court may permit.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The asserted claims of the '289 patent are directed to the abstract idea of creating an image by using one image to enhance another image, just like the mental process that a human brain performs when it uses the image from the left eye fused with the image from the right eye to produce a single, clear image. Everything else in the claims is old, conventional technology. As such, the asserted claims are invalid for failure to claim patent-eligible subject matter under 35 U.S.C. § 101, as interpreted by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014) and applied by scores of decisions since.

Specifically, the '289 patent claims the idea of creating an enhanced image from original images in the context of a digital camera. The claims recite only conventional components to carry out the idea (image sensors, lenses, A/D circuitry, digital images, memory, processor). The claims fail to specify *how* to achieve the idea, such as through a specific algorithm. They recite only the functional end-result—the idea—to be achieved, somehow, in a generic and conventional technological environment. As such, the Complaint fails to state a claim for infringement of patent-eligible claims, and should be dismissed with prejudice.

To the extent the Complaint is not dismissed in its entirety, its purported claim for willfulness

should be dismissed with prejudice.  To support its willfulness claim, the Complaint alleges only that the '289 patent was cited during prosecution of two of Apple's thousands of patents and that Apple carried on with its business.  But courts routinely recognize that mere citation to a patent in prosecution and continuance with business activity, without substantially more, does not show an "egregious case of misconduct beyond typical infringement" required to support a claim for willfulness under the Supreme Court's ruling in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1935-36 (2016).

II.    **THE ASSERTED CLAIMS OF THE '289 PATENT ARE INVALID UNDER § 101.**

A.    **Statement of Facts**

1.    **The Asserted Claims recite a system for enhancing an image using conventional components.**

Plaintiffs' complaint alleges that Apple infringes claims 1, 2, and 4 of the '289 patent (collectively "the Asserted Claims").  (Compl., ¶¶ 25, 31, 42.)  Claim 1 is an independent claim from which claims 2 and 4 depend.  The Asserted Claims recite as follows:

1. An improved digital camera comprising:

a first and a second image sensor closely positioned with respect to a common plane, said second image sensor sensitive to a full region of visible color spectrum;

two lenses, each being mounted in front of one of said two image sensors;

said first image sensor producing a first image and said second image sensor producing a second image;

an analog-to-digital converting circuitry coupled to said first and said second image sensor and digitizing said first and said second intensity images to produce correspondingly a first digital image and a second digital image;

an image memory, coupled to said analog-to-digital converting circuitry, for storing said first digital image and said second digital image; and

a digital image processor, coupled to said image memory and receiving said first digital image and said second digital image, producing a resultant digital image from said first digital image enhanced with said second digital image.

2. The improved digital camera as recited in claim 1, wherein said first

image sensor sensitive to said full region of visible color spectrum.

4. The improved digital camera as recited in claim 1, wherein said analog-to-digital converting circuitry comprises two individual analog-to-digital converters, each integrated with one of said first and second image sensors so that said first and second digital images are digitized independently and in parallel to increase signal throughput rate.

('289, claims 1, 2, 4.)

"Stripped of excess verbiage," the claimed concept is straightforward. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256-57 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017) ("*IV-Capital One II*"). Claim 1 recites a digital camera including various components: image sensors, lenses, analog-to-digital (A/D) converting circuitry, memory, and digital image processor. All of these items are generic and conventional technologies, including as admitted in the intrinsic record of the patent specification and prosecution history, discussed below. These components perform a set of functions: the two sensors, located on a common plane, produce two images, and one image is used to enhance the other image, producing a resultant image. The dependent claims recite additional features regarding the first sensor's sensible color spectrum (claim 2) and parallel A/D converters (claim 4).

Critically, the Asserted Claims do not specify *how* the system might enhance one image with the other to produce a resultant digital image, such as with specific underlying technology and programming that provides a certain enhancement. The Asserted Claims merely lay claim to the aspirational end-result that, somehow, an "enhanced" image is produced.

Indeed, accepting the allegations in Plaintiff's Complaint as true for purposes of this Rule 12(b)(6) motion, Plaintiffs themselves proclaim that "[t]he improved digital camera is not limited to performing any particular type of image enhancement." (Compl., ¶ 11.) In other words, Plaintiffs contend that their claimed invention broadly preempts any and all types of image enhancement. Plaintiffs even go so far as to boast that "virtually all dual-lens cameras on the market today use the techniques claimed in the '289 Patent." (*Id*. ¶ 12.)

The same idea of the Asserted Claims is familiar from everyday life. Two eyes on a common plane, viewing an object, produce two images that are combined to form a person's vision. The human brain receives both images and uses one to enhance the other, thereby producing the visual imagery



that the person sees. For example, each eye produces an image with a slightly different field of view; the brain then combines those two separate images to provide an enhanced, single image. The figure to the right is illustrative, showing a person looking at a line of bowling pins. People also typically have different strengths of vision in each eye and have one dominant eye, so that the brain relies upon one eye to enhance the visual image in various ways.[1]

Where human vision uses components of the human body (the human optical system and brain), the claimed invention uses the analogous electronic components of a conventional camera system to perform the mental process: two eyes are replaced with two lenses, retinae are replaced with sensors, the optic nerve system is replaced with analog-to-digital converters to convert light into images, and the brain is replaced with an image processor with memory.

### 2.    The specification confirms that the alleged invention is merely an idea.

The written description in the '289 patent confirms that the idea for enhancing one image with another is just that: an idea. The patent impermissibly leaves to the reader the work of figuring out *how* one might program the system's processor in an effort to achieve the claimed result of an "enhanced" image. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (claims are patent-ineligible where they recite "generic functional language to achieve [the] purported solutions" without specifying "how the desired result is achieved.") (citations omitted).

The specification, filed in January 1999, admits that prior art digital cameras used image sensors to create digital images. ('289, col. 1:26-36.) The specification also admits that prior art image sensors could be implemented either with filters to sense certain colors or as black-and-white

---

[1] *See*, *e.g.*, "Association of Ocular Dominance and Anisometropic Myopia," iovs ("Investigative Ophthalmology & Visual Science") Journal, August 2004 ("Ocular dominance, first described in 1593, is the tendency to prefer visual input from one eye over the other . . . both in fixation and attention or in perceptive function.") (internal citations omitted), available at https://iovs.arvojournals.org/article.aspx?articleid=2124019.

sensors that are not limited in the color they receive. The specification's Description of the Related Art section describes a "typical" prior art image sensor as a photosensitive chip that "comprises a plurality of photocells arranged in an array." (*Id.*, col. 1:50-52.) "Selectively transmissive filters" could be applied to the photocells so that, for example, groups of photocells would be made to sense the "red, green and blue range of the visible spectrum, respectively." (*Id.*, col. 1:52-57.) Alternatively, image sensors did not need to be limited to receiving specific colors by applying filters, such as in "black-and-white digital cameras in which there is only one monochromatic image sensor sensing only the intensity of an imaging target." (*Id.*, col. 7:35-39.)

Mirroring what the brain already does, the specification states that the purported invention of the '289 patent uses "multiple image sensors with multiple lenses" and purportedly achieves high-quality, "enhanced" images. (*Id.*, col. 2:34-35, 2:47-49.) But the specification does not teach that the image enhancement necessarily uses any specific programming or algorithm. The specification states, for example, that "a set of image processes implemented in a DSP chip perform a number of operations at **810** that include" various functions, and also states that "it is possible to enhance images, such as noise removal and color correction at **820**." (*Id.*, col. 10:6-17, Fig. 8 (**810** and **820**)). However, the specification does not include any algorithmic details. It provides only a classic "black box," shown in Figure 8 ("Enhance images" item **820**).



**Fig. 8 (excerpt)**

Enhance images

Thus, the technical details of the "possible" image enhancement process are left unexplained. It is a bit like saying "and then the magic happens."

### 3.   The prosecution history further confirms ineligibility.

The prosecution history confirms that the physical components recited in the Asserted Claims were conventional and well-known in the prior art. The Examiner cited prior art confirming that digital cameras containing multiple sensors with multiple lenses, A/D conversion circuitry (including multiple parallel A/D conversion pathways per claim 4), digital images, memory, and digital image processor were known in the art. For example, the Examiner stated as follows regarding the prior art reference U.S. Patent No. 4,506,294 to Nagumo:

Nagumo discloses a digital camera (solid state camera) with three image sensors (1, 2, and 3) closely positioned with respect to a common plane **[multiple image sensors]** with reference to an image target, with lenses mounted in front of all sensors **[multiple lenses]**. (See figure 7.) . . . Nagumo also disclose individual A/D conversion circuitry (17, 18 and 19) such that the images are digitized in parallel and simultaneously **[multiple parallel A/D converters per claim 4]**. Nagumo furthermore discloses a digital image processor (synthesizer) within the interpolation circuits **[digital image processor]** that synthesizes the two images and produces an enhanced digital image from said first and second images **[enhanced digital image]**. (See column 3, lines 1-10.) The examiner interprets the interpolation circuit (20, 21, and 22) of Nagumo as comprising image memory **[image memory]** since, the images must be stored in order to be processed.

(Ex. A (11/07/2002 Non-Final Office Action) at 2-3 (bracketed annotations added).)   Figure 7 of Nagumo is reproduced below for reference, showing the features the Examiner identified:



(Ex. B (Nagumo, entitled "Solid State Camera"), Fig. 7.)  Nagumo's "Description of the Prior Art" section also notes that multi-sensor, multi-lens cameras were known in the prior art even prior to Nagumo's 1983 filing date.  (*Id.*, col. 1:11-2:34 (discussing prior art with three image sensors 1, 2, and 3 with lenses L1, L2, and L3 as depicted in Fig. 1), Fig. 1 ("Prior Art" diagram).)  In addition to Nagumo's teaching of parallel A/D converter paths, the Examiner also cited prior art that taught the integration of A/D conversion circuitry with an image sensor.  (Ex. A at 3 (regarding U.S. Patent No. 6,021,172 to Fossum).)[2]  The Examiner also took "Official Notice that it is well known in the art to

---

[2] Apple requests that the Court take judicial notice of the cited portions of the prosecution history, which it may properly do in deciding a Rule 12(b)(6) motion.  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (considering the prosecution history in affirming judgment on

[use] gray intensity images with regards to obtaining luminance signals," and thus found that "it would have been obvious to incorporate the fourth image sensor … in order to produce a gray (green) intensity image in order to improve the resolution and dynamic range of a full color image signal." (*Id*.)  The applicants (now Plaintiffs) did not dispute any of these findings.

## B.      Legal Standard

Patent ineligibility under § 101 is a threshold issue that "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion" as a matter of law, before formal claim construction or fact discovery, where there are no relevant factual disputes.  *SAP Am., Inc. v. Investpic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018).[3]  Resolving eligibility on the pleadings minimizes "expenditure of time and money by the parties and the court," guards against "vexatious infringement suits," and "protects the public" from unworthy patents that improperly monopolize the public store of knowledge. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

In *Alice*, the Supreme Court applied the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 218.  The inquiry distinguishes patent-eligible inventions from mental processes and abstract intellectual concepts that are not eligible for patent protection.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) ("Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work") (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

At step one, the Court determines whether the asserted claims are directed to an abstract idea,

the pleadings of § 101 invalidity); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990) (judicial notice of Patent Office proceedings); *Coinstar, Inc. v. Coinbank Automated Sys., Inc.,* 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (same); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 995 (N.D. Cal. 2014) (judicial notice for Rule 12 motion); Fed. R. Evid. 201.
[3] *See also, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1341 (Fed. Cir. 2018) (holding claims invalid under § 101 on the pleadings); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (same); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 996 (Fed. Cir. 2018) (same); *Maxon, LLC v. Funai Corp.*, 726 F. App'x 797, 798 (Fed. Cir. 2018) (same).

such as longstanding commercial or human activities. *Alice*, 573 U.S. at 218-19. That is, the Court must determine whether the claims' "focus"—their "character as a whole"—is an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) ("*IV-Erie*") ("heart" of computer-based claims was abstract idea); *Ultramercial,* 772 F.3d at 714–15 ("heart" of eleven-step computer-based claim was abstract idea).

Courts often consider whether the claims focus on a "specific implementation of a solution to a problem"—"a specific means or method for improving technology"—or instead use a computer "merely as a tool" to perform an abstract idea. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017) (internal quotations and citations omitted). Implementing the idea in a particular "technological environment" using conventional computer technology does not make the claims "any less abstract." *IV-Capital One II*, 850 F.3d at 1340.

At step two, the Court determines whether the other claim elements, individually or collectively, add "significantly more" to the abstract idea that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221-22. Implementing an abstract idea with "well-understood," "routine," or "conventional" activities, or limiting the idea to a particular technological environment, does not suffice. *Id*. at 225; *see also, e.g.*, *OIP Techs.*, 788 F.3d at 1362-63 (observing that "conventional computer activities or routine data-gathering steps" are insufficient). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327.

C.   **The Asserted Claims Do Not Recite Patent-Eligible Subject Matter.**

1.   *Alice* **Step 1 – the Asserted Claims are directed to an abstract idea.**

For electronic system claims, a "relevant inquiry at step one is to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (internal quotations and citation omitted) (holding invalid claims to a system and related method for recording and manipulating "digital images"). The Step 1 analysis examines "whether the claims focus on a specific means or method that improves the relevant technology," which may pass muster under § 101, or are "directed

to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery," which indicates that the claims are directed to an abstract idea. *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotations and citation omitted).

The Asserted Claims fall squarely within the category of abstract ideas. In particular, they are directed to the abstract idea of creating an enhanced image by combining other images, which is akin to the mental process of human vision itself. Two image sensors (eyes) provide images to a processing apparatus (the human brain), which enhances one image with the other to produce a resultant image. The Asserted Claims merely situate this idea in the context of digital imaging components that are generic and conventional, as shown in the intrinsic evidence discussed above. "As the Supreme Court and the Federal Circuit have made perfectly clear, merely implementing an abstract idea on conventional computer technology is not enough." *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *4 (N.D. Cal. July 10, 2015) (citing cases).

Critically, the claims fail to specify *how* the system's generic "digital image processor" might perform its function of generating the enhanced image, such as through a particular algorithm or software programming. *See TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016) ("Much like the unpatentable subject matter in *TLI Communications*, the claims in question here are defined only in terms of their functions ….") (citing *In re TLI*, 823 F.3d at 613). The Federal Circuit has repeatedly made clear that claims like these fail to pass muster under *Alice* and § 101 because they are devoid of details on "*how* to engineer or program" the generic recited components. *Interval Licensing*, 896 F.3d at 1345 (emphasis in original). The claims are patent-ineligible because they recite only "result-based" functional elements and "uses of existing computers as tools in aid of processes focused on 'abstract ideas.'" *Id.* at 1343-44; *see also*, *e.g.*, *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269-70 (Fed. Cir. 2016) ("The purely functional nature of the claim confirms that it is directed to an abstract idea …."); *Elec. Power Grp.*, 830 F.3d at 1354 (ineligible claims provide no "particular … inventive technology for performing those functions").

Indeed, Plaintiffs themselves assert that the claimed invention "is not limited to performing any particular type of image enhancement." (Compl., ¶ 11.) Thus, the claimed use of a generic digital

image processor to enhance one image with another to produce a resultant image is nothing more than an open-ended instruction to "do it on a computer." *Apple*, 842 F.3d at 1243.

The Asserted Claims are therefore unlike the electronic inventions that the Federal Circuit has found to be patent-eligible in the wake of *Alice*. *See*, *e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (improved computer database structure); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1307-08 (Fed. Cir. 2016) (specific improvement to lip synch animation based on particular "output morph weight set stream" and "transition parameters"); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1260 (Fed. Cir. 2017) ("new, improved and more efficient memory system"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-05 (Fed. Cir. 2018) ("specific" improved "'behavior-based' virus scan").

### 2.   *Alice* Step 2 – the Asserted Claims recite no inventive concept.

The Asserted Claims fail to recite any inventive concept sufficient to "transform" the abstract idea into a concrete, patent-eligible invention. *Alice*, 573 U.S. at 225-27 (ineligible claims recited a "data processing system" for performing functions). The claims merely recite a set of generic and conventional prior art items—sensors, lenses, A/D converters, digital images, memory, and processor—to achieve the desired functional result. But implementing the idea in a particular "technological environment," using conventional components, does not make the claims "any less abstract." *IV-Capital One II*, 850 F.3d at 1340; *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) ("siting the ineligible concept in a particular technological environment" cannot confer eligibility). The Asserted Claims recite only high-level "generic functional language to achieve [the] purported solutions" without specifying "*how* the desired result is achieved." *Two-Way Media*, 874 F.3d at 1339 (emphasis in original; citation omitted).

The "ordered combination" of the claim elements also does not provide a sufficient inventive concept. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1289-90 (Fed. Cir. 2018) (citation omitted). The structure of the Asserted Claims follows the same convention as human vision: two sensors with lenses, information conversion apparatus, memory, and processing apparatus. These types of generic components were known in the prior art, as shown in the specification and prosecution history. The claims do not recite significantly more than the abstract idea to achieve a specific patent-

eligible invention. *SAP Am.*, 898 F.3d at 1166. Nothing in dependent claims 2 and 4 changes the result either. Claim 2 states that both image sensors are sensitive to a full visible color spectrum, just like human eyes. *See also supra*, Section II.A.2 (specification discussion of prior art image sensors). Claim 4 recites parallel processing, which reflects the human optical system, and which the Examiner found was known in the prior art, as noted above. The law is clear that "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech.*, 899 F.3d at 1290-91. Such is the case here, and as a result the Asserted Claims are patent-ineligible.

Finally, while there is no separate requirement to show that the claims create an undue risk of preemption,[4] it bears noting that Plaintiffs allege that their claimed invention broadly preempts the field, covering any and all possible types of image enhancement—a telling indication of patent-ineligibility. (Compl., ¶ 11 (alleging that the purported invention "is not limited to performing any particular type of image enhancement"), ¶ 12 (alleging that "virtually all dual-lens cameras on the market today use the techniques claimed in the '289 Patent").) *TriDim Innovations*, 207 F. Supp. 3d at 1080 (stating that "the patents and claims here, which are defined in terms of their functionalities only, raise a serious preemption concern").

## III.   THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD WILLFUL INFRINGEMENT

### A.   Legal Standards

A dismissal under Fed. R. Civ. P. 12(b)(6) is proper where, as here, there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016) (citations omitted). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. 544 at 570. A Court will not assume facts not alleged, nor will it draw unwarranted inferences, but should draw on its common sense and judicial experience. *Ashcroft*

---

[4] "The Supreme Court has made clear that the principle of preemption is the basis for the judicial exceptions to patentability," though the Federal Circuit holds that "questions on preemption are inherent in and resolved by the § 101 analysis." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (citation omitted). Thus, when claims fail the two-part *Alice* test, as they do here, "preemption concerns are fully addressed and made moot." *Id.*

*v. Iqbal*, 556 U.S. 662, 679 (2009).

The Supreme Court in *Halo* confirmed that willful infringement should be reserved for an "egregious case of misconduct beyond typical infringement." *Halo*, 136 S. Ct. at 1935; *see also id.* at 1936 (Breyer, J., concurring) (knowledge of the patent "*and nothing more*" does not support enhanced damages (emphasis in original)). Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 1932. They are appropriate only in narrow circumstances such as where the alleged infringer acted as a "'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Id.* at 1936 (citation omitted).

Accordingly, after *Halo*, courts routinely grant motions to dismiss willful infringement claims when the plaintiff fails to allege facts that "support a plausible inference that [the alleged infringer] engaged in 'egregious' conduct that would warrant enhanced damages . . . ." *See, e.g.*, *Finjan, Inc., v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017); *see also Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016) (dismissal for failing to state facts demonstrating that the defendant's actions "actually amounted to an egregious case of infringement of the patent"); *CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-cv-00859-RCJ-VCF, 2017 WL 662489, at *4 (D. Nev. Feb. 17, 2017).

### B.   Summary of Allegations in the Complaint Regarding Alleged Willfulness

The Complaint does not allege any pre-suit contact between Plaintiffs and Apple. Plaintiffs' allegations of knowledge of the patent-in-suit are limited to four paragraphs regarding Apple's prosecution of two of its many patents. Plaintiffs allege that during prosecution of U.S. Patent No. 8,115,825 ("the '825 patent"), the patent examiner rejected Apple's then-pending claims as either anticipated by or obvious in light of the patent-in-suit. (Compl., ¶ 26.) Plaintiffs allege that Apple's patent attorney discussed the rejection with the Examiner and then amended the pending claims. (*Id.*) Plaintiffs allege that during prosecution of U.S. Patent No. 8,681,250 (a continuation of the '825 patent), Apple's patent attorney filed an information disclosure statement listing the patent-in-suit. (*Id.* ¶ 27.) Based on these routine patent prosecution activities, Plaintiffs allege:

> Having had its '825 Patent initially rejected by the USPTO in light of the '289 Patent, and then having cited the '289 Patent in the continuation application that ultimately issued as the '250 Patent, Apple was both aware of the claims of the '289 Patent no later than June 21, 2011, was aware of the significance of the '289 Patent to products incorporating dual-lens cameras and their uses, and was aware that the dual-lens technology it purchased at great expense from PrimeSense and LinX was based on the technology found in the '289 Patent.

(*Id.* ¶ 28.)[5]  Plaintiffs allege that "[d]espite this awareness, Apple made no attempt to contact Plaintiffs or obtain a license for the '289 technology."  (*Id.*)  They provide a conclusory allegation that "Apple's conduct was deliberate and willful and subjects it to exemplary damages under the patent laws."  (*Id.* ¶ 29; *id.* ¶ 39 ("Apple's infringement of the '289 Patent is egregious.").)  Plaintiffs also allege, without specific facts, that "Apple made the deliberate decision to acquire and to continue to sell products and services that it knew infringed the '289 Patent" and that "Apple has undertaken no efforts to design these products or services around the '289 Patent to avoid infringement despite Apple's knowledge and understanding that its products and services infringe the '289 Patent."  (*Id.* ¶¶ 38, 40.)

### C.    Plaintiffs' Willful Infringement Claim Fails Because The Complaint Does Not Allege Specific Factual Allegations Plausibly Showing Egregious Misconduct

Plaintiffs' willfulness claim fails because the Complaint does not allege any facts that plausibly support an inference that Apple engaged in egregious misconduct as required by *Halo*.  *Halo*, 136 S. Ct. at 1935 (willful infringement is reserved for "egregious cases of misconduct beyond typical infringement.").  Merely citing to a patent during routine prosecution of two of Apple's thousands of patents, and otherwise continuing with its business, is insufficient to plausibly support an inference that Apple somehow acted with egregious misconduct toward the '289 patent.  Courts have repeatedly found that citation to a patent during patent prosecution does not provide knowledge of any potential infringement sufficient to support a willfulness claim.  *See Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-cv-02024-RMW, 2016 WL 4427490, at *4 (N.D. Cal. Aug. 22, 2016) (collecting and approving reasoning of cases holding that citation to a patent during prosecution of defendant's patents is legally insufficient to support willful infringement); *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*,

---

[5] The Complaint contains various allegations regarding Apple's acquisition of two companies, PrimeSense and LinX, with no allegation that those companies have any factual connection to Plaintiffs or the '289 patent.  (Compl., ¶¶ 16-18.)

No. 14-6650, 2015 WL 3755223, at *11 (E.D. Pa. June 15, 2015) ("The fact that Globus listed Bonutti's patent in connection with the prosecution of its own patent does not indicate that those patents were 'called to the attention' of the defendant as a potential infringement risk."); *Spherix Inc. v. Juniper Networks, Inc.*, No. 14-cv-578-SLR, 2015 WL 1517508, at *3 (D. Del. Mar. 31, 2015) ("the fact that the '123 patent was referenced during prosecution of two of defendant's over 1,700 patents [] is not compelling evidence of knowledge ....") (citation omitted); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-cv-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (holding that allegations that a patent examiner cited to the patent-in-suit as prior art during prosecution of several of the defendant's patent applications was insufficient to allege actual knowledge of the patent-in-suit by the defendant).

Additionally, the Complaint's allegations that Apple did not contact Plaintiffs or implement a design-around after citing the patent-in-suit during prosecution does not plausibly rise to the level of egregious misconduct "beyond typical infringement" required to show willfulness under *Halo*. *See Halo*, 136 S. Ct. at 1935. Nor do the factual allegations set forth in the Complaint support Plaintiffs conclusory assertions that Apple allegedly "made the deliberate decision to acquire and to continue to sell products and services that it knew infringed the '289 Patent" and allegedly harbored "knowledge and understanding that its products and services infringe the '289 Patent." (Compl., ¶¶ 38, 40.) Willfulness under *Halo* requires more than allegations supporting an inference of "knowledge and continued infringement." *See XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848-RS, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) ("Although XpertUniverse has alleged knowledge and continued infringement, it needs to do more to show that Cisco has engaged in 'egregious cases of misconduct beyond typical infringement' that could possibly warrant enhanced damages."). As other Courts in this district have observed, a "[d]efendant's ongoing manufacturing and sales, on their own, are equally consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit." *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) ("Plaintiff provides no specific factual allegations about Defendant's subjective intent or details about the nature of Defendant's conduct to render a claim of willfulness plausible, and not merely possible."). The same observation holds true here. Plaintiffs do

not allege that they provided Apple with pre-suit notice of alleged infringement, nor do they provide any "specific factual allegations" sufficient to render "plausible" a finding that Apple believed that it was infringing a valid patent before this lawsuit was filed. *Id.*

In sum, while Plaintiffs lob broadside attacks against Apple's allegedly "egregious" conduct, they fail to support their conclusory labels with specific, non-conclusory factual allegations sufficient to "nudge[] their claims across the line from conceivable to plausible ...." *Twombly*, 550 U.S. at 570. The allegations of willfulness are insufficient under *Halo*, and Plaintiffs' willfulness claim should be dismissed. *Finjan, Inc.*, 2017 WL 2462423, at *5 (dismissal of willfulness claim appropriate where factual allegations do not "support a *plausible* inference that [the alleged infringer] engaged in 'egregious' conduct that would warrant enhanced damages . . . .") (emphasis added).

Because the only factual allegations relating to willfulness are insufficient to support a claim under *Halo*, any amendment would be futile. Therefore, to the extent the Complaint is not dismissed in its entirety, the Court should dismiss Plaintiffs' willfulness claim with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court dismiss the Complaint with prejudice, or in the alternative dismiss with prejudice Plaintiffs' claim for willful infringement.

Dated:   January 9, 2019

COOLEY LLP


/s/ Heidi L. Keefe
HEIDI KEEFE (178960)
(hkeefe@cooley.com)
LOWELL MEAD (223989)
(lmead@cooley.com)
PRIYA VISWANATH (238089)
(pviswanath@cooley.com)
ALLIE DUNWORTH LEEPER (307310)
(aleeper@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304
Telephone:   (650) 843-5000
Facsimile:   (650) 849-7400

COOLEY LLP
PHILLIP MORTON (*Pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania Avenue
NW, Suite 700
Washington, DC 20004-2400
Telephone:  (202) 842-7800
Facsimile:   (202) 842-7899

*Attorneys for Defendant Apple Inc.*