UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANBIN YU, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 3:18-cv-06181-JD<br><br>**ORDER RE MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |
| YANBIN YU, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SAMSUNG ELECTRONICS CO., LTD, et al.<br><br>　　　　Defendants. | Case No. 3:18-cv-06339-JD |

These cases are related actions brought by the patentees over dual-lens cameras in cell phones. Yanbin Yu and Zhongxuan Zhang ("Yu") sued Apple Inc. in Case No. 18-cv-06181-JD. Dkt. No. 1 (the Apple complaint is designated "AC").[1] They filed a substantively similar complaint against Samsung Electronics Co., Ltd. and its subsidiary, Samsung Electronics America, Inc. (together "Samsung"), in Case No. 18-cv-06339-JD. Dkt. No. 1 (the Samsung

---

[1] Unless otherwise noted, all docket references are to *Yu v. Apple Inc.*, Case No. 18-cv-06181.

1   complaint is designated "SC"). The cases involve one patent owned by Yu: U.S. Patent No.
2   6,611,289, entitled "Digital Cameras Using Multiple Sensors with Multiple Lenses" (the "'289
3   patent"). AC ¶ 8-12; SC ¶ 10-14. Yu alleges that the dual-lens cameras in Apple and Samsung
4   cell phones infringe the '289 patent. AC ¶ 13-25; SC ¶ 15-26.

Apple has moved to dismiss for patent ineligibility under 35 U.S.C. § 101, and Samsung has joined the motion on the basis of Apple's arguments. Dkt. No. 43; Dkt. No. 40 at 5 in Case No. 18-cv-06339. In defendants' view, the asserted claims cannot be patented because they "are directed to the abstract idea of creating an image by using one image to enhance another image," without any saving inventive concept. Dkt. No. 43 at 6. In light of "the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018), the AC and SC are dismissed under Section 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), with leave to amend.

**BACKGROUND**

The '289 patent was issued to Yu on August 26, 2003, and expired January 15, 2019. Dkt. No. 1-1. The patent was directed to improving digital photos, which were said to lack the resolution and dynamic color range of traditional film images. *See* AC ¶ 10; SC ¶ 12; Dkt. No. 1-1 at 1:24-2:22. The inventors described "a great need" to improve the quality of digital photos without "enormously incurring the cost of photosensitive chips with multimillion photocells." Dkt. No. 1-1 at 2:3-7. To that end, the patent claims an invention of a digital camera "capable of producing high resolution images" with "better colors and details in a greater range." *Id.* at 2:4-16. The patent proposes an arrangement of multiple image sensors, lenses and a processor to "produce high quality and film-like true color digital images." *Id.* at 2:36-49.

The parties' briefing focuses on claim 1 as the representative independent claim. Dkt. No. 43 at 8; Dkt. No. 45 at 8; Dkt. No. 46 at 8. *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016) (approving treatment of claims as representative in Section 101 challenge). Claim 1 recites:

    1.    An improved digital camera comprising:

2

> a first and second image sensor closely positioned with respect to a common plane, said second image sensor sensitive to a full region of visible color spectrum;
>
> two lenses, each being mounted in front of one of said two image sensors;
>
> said first image sensor producing a first image and said second image sensor producing a second image;
>
> an analog-to-digital converting circuitry coupled to said first and said second image sensor and digitizing said first and said second intensity images to produce correspondingly a first digital image and a second digital image;
>
> an image memory, coupled to said analog-to-digital converting circuitry, for storing said first digital image and said second digital image; and
>
> a digital image processor, coupled to said image memory and receiving said first digital image and said second digital image, producing a resultant digital image from said first digital image enhanced with said second digital image.

Dkt. No. 1-1 at 10:38-58. All the remaining asserted claims are dependent on claim 1. *Id.* at 10:59-11:6.

The patent expressly eschews any special hardware or software in favor of a "generic solution." *See id.* at 2:3-7. The patent states that different types of sensors may be used as part of the invention. *Id.* at 4:67-5:4. The lenses in the patent are contrasted to a special process. *Id.* at 2:56-57 ("[N]o micro-lenses process is needed."). The analog-to-digital circuitry is described simply as "digitiz[ing] the output signals." *Id.* at 5:41-43. The image memory is not detailed. The image processor is described functionally. *Id.* at 2:44-49 ("Using a set of digital image processes embedded in a digital signal processing chip, images . . . are processed . . . and subsequently produce high quality and film-like true color digital images.").

## DISCUSSION

### I. LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3

This does not impose a probability requirement at the pleading stage. It simply calls for enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix*, 882 F.3d at 1125. But as the circuit has recently emphasized, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089, 1097 (Fed Cir. 2016)); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, Case No. 18-2178, 2019 WL 2588278, at *10 (Fed. Cir. June 25, 2019) (vacating Rule 12(b)(6) and Rule 12(c) dismissals where complaint made plausible and "well-pleaded allegations" of eligibility). This is particularly true for the element of an inventive concept, which raises a question of fact that can be resolved in a motion to dismiss only if the answer may be found in the complaint, the patent, and matters subject to judicial notice. *Aatrix*, 882 F.3d at 1128.

To be sure, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or other sanctions. *See Cellspin*, 2019 WL 2588278, at *8 ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing en banc) ("[I]f the allegations in the complaint about the invention as claimed ultimately lack evidentiary support or if the case is exceptional, district courts can award attorneys' fees to the accused infringer under

4

either Rule 11 or [35 U.S.C.] § 285 to compensate the accused infringer for any additional litigation costs it incurs."). But the inquiry in a motion to dismiss is typically confined to the contents of the complaint and the plain words of the patent that is incorporated by reference. To the extent claim construction issues might arise, the Court should adopt the patentee's proposed constructions. *Aatrix*, 882 F.3d at 1125; *IPLearn-Focus, LLC v. Microsoft Corp.*, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015), *aff'd*, 667 F. App'x 773 (Fed. Cir. July 11, 2016).

Here, the Rule 12(b)(6) evaluation has been substantially streamlined by the complaint and the parties' arguments. Plaintiffs do not object to resolving the Section 101 question in the context of defendants' motion and have not identified any factual disputes that might make resolution on the pleadings inappropriate. The complaint does not allege anything about the inventive concept aspect of eligibility, and the parties raise no disputes of fact about inventiveness. Neither side has called for claim construction as part of the eligibility inquiry, and no construction disagreements were identified in the briefs or arguments. Consequently, the Section 101 inquiry may properly be made at this stage of the case.

For the merits of the Section 101 issue, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (citation omitted). These exclusions are intended to guard against undue preemption of innovation and invention. *Alice*, 573 U.S. at 216 (citing U.S. Const., Art. I, § 8, cl. 8). The Court must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," because overbroad patent protection "would risk disproportionately tying up the use of the underlying ideas." *Id.* at 217 (alterations in original) (internal quotation marks and citation omitted).

In *Alice*, the Supreme Court set out a two-part test for Section 101. First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, law of nature or natural phenomenon. *Id.* at 218. It is often "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases"

5

for purposes of the step one analysis. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see also Alice*, 573 U.S. at 221 ("In any event, we need not labor to delimit the precise contours of the 'abstract ideas' category in this case. It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here.").

The "purely functional nature of the claim confirms [whether the patent] is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (describing "abstract" as turning on "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it"). Oversimplifying the claims should be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (second alteration in original) (internal citation omitted). For the digital technology involved here, the relevant inquiry is "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335; *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an abstract idea to satisfy step one, the claim's focus must be on something other than the abstract idea itself.").

If a patent is directed to a patent-ineligible concept, the second step in *Alice* is to look for an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (alteration in original) (internal quotation marks and citation omitted). This step asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). The answer must include something "significantly more" than the abstract idea itself. *BSG Tech*, 899 F.3d at 1290. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'" *In re TLI*

6

*Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225). In addition, merely reducing an abstract concept to a particular technical platform is not enough to provide the inventive element needed to support a patent. *Elec. Power Grp.*, 830 F.3d at 1354; *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290-91.

## II. THE CLAIMED INVENTION IS NOT PATENTABLE

### A. Claim 1 Is Directed to an Abstract Idea

Turning to the '289 patent and representative claim 1, the first task is to ascertain "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) (internal quotation marks omitted) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). To that end, the claim may be "considered in light of the specification." *Enfish*, 822 F.3d at 1335; *see also IPLearn-Focus*, 2015 WL 4192092, at *4.

In pertinent part, claim 1 recites a digital camera, comprising "[1] a first and a second image sensor closely positioned with respect to a common plane . . . [2] two lenses . . . [3] said first image sensor producing a first image and said second image sensor producing a second image . . . [4] an analog-to-digital converting circuitry coupled to said first and said second image sensor . . . [5] an image memory . . . and [6] a digital image processor . . . producing a resultant digital image from said first digital image enhanced with said second digital image." Dkt. No. 1-1 at 10:38-58. The specification clearly identifies the deployment of multiple image sensors as the "claimed advance over the prior art." *See id.* at 4:64-67 ("Fundamentally and distinctly different from existing digital cameras, improved digital camera . . . uses four identical image sensors."); *id.* at 9:55-57 ("Different from existing digital cameras, the disclosed improved digital camera uses multiple sensors with multiple lenses.").

As this plain language makes clear, claim 1 is drawn to the abstract idea of taking two pictures and using those pictures to enhance each other in some way. Defendants say that this same idea can be found in the mental processes that produce human vision from inputs from two eyes, Dkt. No. 43 at 8-9, but the Court need not go so far afield. Since the earliest years of the photographic medium, those having skill in the art have used multiple exposures, or the combining of multiple images, to enhance images. *See The Breaking Wave*, The J. Paul Getty Museum, http://www.getty.edu/art/collection/objects/61917/gustave-le-gray-the-breaking-wave-french-1857/ (last visited July 2, 2019) ("Balancing the different light intensities of the sea and sky in one simultaneous exposure was not easily solved . . . . Le Gray surmounted this dilemma [in 1857] by montaging several paper or glass plate negatives with different exposures."). Such a "fundamental [and] long prevalent" practice is a quintessential abstract idea. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 219); *see also DIRECTV*, 838 F.3d at 1258 (merely adding computer components to well-known practice does not make invention non-abstract).

Additionally, like the unpatentable subject matter in *TLI Communications*, which was directed to "the abstract idea of classifying and storing digital images," the claims here are defined only in terms of their functions. *In re TLI Commc'ns*, 823 F.3d at 609; *see also id.* at 612 ("The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms."). For example, the '289 patent does not require special hardware or software. *See* Dkt. No. 1-1 at 2:3-7 ("[T]here is a great need for a generic solution that makes digital cameras capable of producing high resolution images without enormously incurring the cost of photosensitive chips with multimillion photocells."). The complaint also does not allege anything other than a generic environment of image sensors and lenses for the invention. *See, e.g.*, AC ¶ 10-11; SC ¶ 12-13.

Yu's arguments to the contrary are not well taken. He says that *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017), mandates a denial of defendants' motion. Dkt. No. 45 at 13-14. *Thales* upheld a patent that dealt with an arrangement of sensors, and Yu contends the result should be the same here because the '289 patent similarly instructs a "particular

8

configuration" of sensors. *Id.* at 13. But *Thales* is distinguishable because its patent-in-suit stated why and how the "particular configuration" of sensors contributed to an advancement over the prior art. *Thales*, 850 F.3d at 1345. The only configuration to which "benefits and advantages" are attributed in the specification in the '289 patent is the mere use of multiple lenses and sensors. Dkt. No. 1-1 at 2:50-65. There is scant mention of, and certainly no emphasis on, the relative positions of the lenses and sensors. *See id.* at 6:21-26 ("Regardless of other possible arrangements of image sensors behind four lenses . . . it can be appreciated to those skilled in the art that four images . . . resulting respectively from four lenses . . . will have to be registered before forming a color image therefrom."). Yu raises the '289 patent prosecution history, but that too simply highlighted a combination of components defined by the number and type of image sensors. Dkt. No. 45 at 10; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (judicial notice of public records); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) ("Prosecution histories constitute public records."). Thus, while the Federal Circuit has "held claims focused on various improvements of systems directed to patent eligible subject matter under § 101," those cases, like *Thales*, are distinguishable because the claims were "directed to a particular manner" of improving computer functionality, whereas the '289 patent goes entirely to the abstract idea of using multiple images to enhance an image. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018).

Yu's reliance on the unreported decision in *Electronic Scripting Products, Inc. v. HTC America Inc.*, Case No. 17-cv-05806-RS, 2018 WL 1367324 (N.D. Cal. Mar. 16, 2018), is also misplaced. There, the plaintiff had demonstrated that "the sensors are not mere conduits for abstract principles, but instead their placement is integral to the improved functioning of the system." *Id.* at *5. Yu has not done the same.

Yu suggests that the '289 patent describes a non-abstract improvement to camera technology and hardware, but the plain text of the patent shows otherwise. The sections Yu points to simply describe the principle that combining images with different dynamic ranges creates an image with a higher dynamic range. Dkt. No. 1-1 at 9:28-40; *id.* at 9:46-52; *see also* Dkt. No. 45 at 15. It does not describe a specific asserted improvement in digital photo capabilities. The rest

9

of the specification does nothing more than state the abstract idea of using multiple lenses and image sensors to produce enhanced images. The complaint also does not allege any facts plausibly showing that the claimed invention overcomes a problem uniquely arising in the digital context. *See DDR Holdings*, *LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-59 (Fed. Cir. 2014); *see also* AC ¶ 11; SC ¶ 13 ("The improved digital camera is not limited to performing any particular type of image enhancement.").

### B. Claim 1 Lacks an Inventive Concept

The question of whether claim 1 features an inventive concept sufficient to save it from ineligible abstraction is also answered against Yu. Yu acknowledges that the inventive concept "must be significantly more than the abstract idea itself," *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016), and it must be more than "well-understood, routine, conventional activity," *Mayo*, 566 U.S. at 79. *See* Dkt. No. 45 at 12. Claim 1 fails on both counts.

Although it is true that deciding whether a claim features an inventive concept outside the conventional may entail questions of fact, *see Cellspin*, 2019 WL 2588278, at *6, that is not the case here. Yu makes no argument to that end, and the complaint does not allege that the claimed invention contains unconventional digital camera elements beyond the abstract idea to which the patent is directed. There are no allegations that the asserted combination and arrangement of "well-understood, routine [and] conventional" digital camera components goes beyond the abstract idea of using multiple images to enhance one image. *See Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (a "claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' more than that ineligible concept") (quoting *BSG Tech*, 899 F.3d at 1290); *see also InvestPic*, 898 F.3d at 1168-69 ("Here, all of the claim details identified by [plaintiff] . . . fall into one or both of two categories: they are themselves abstract; or there are no factual allegations from which one could plausibly infer that they are inventive."). Once the abstract idea is removed from the claim, all that is left here is the "conventional technology" of a digital camera, such as image sensors, lenses, circuitry, memory and a processor being used in

conventional ways. The Federal Circuit has consistently held "that claims are not saved from abstraction merely because they recite components more specific than a generic computer." *BSG Tech,* 899 F.3d at 1286.

The silence of the complaint sets this case apart from *Aatrix*, *Cellspin*, and *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), where the plaintiffs made non-conclusory allegations establishing an inventive concept. In *Aatrix*, for example, the plaintiff alleged that the unique importation of data from third-party programs improved the functioning of the computer. *Aatrix*, 882 F.3d at 1127. In *Cellspin*, the amended complaint identified "several ways in which its application of capturing, transferring, and publishing data was unconventional." *Cellspin*, 2019 WL 2588278, at *7. And in *Berkheimer*, the Federal Circuit cited the specification's description of "an inventive feature that stores parsed data in a purportedly unconventional manner," in denying summary judgment. *Berkheimer*, 881 F.3d at 1369.

In contrast, the portions of the '289 patent and the complaint that Yu highlights as describing a "unique and unconventional combination and arrangement of digital camera components constitut[ing] an inventive concept" and "improved operation and capabilities over prior single-sensor and single-lens digital cameras," Dkt. No. 45 at 15, are entirely conclusory and merely describe multiple sensors and lenses. There is no "non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs.*, 827 F.3d at 1350. Any benefits and improvements that might accrue simply from instantiation of the abstract idea of using multiple images to enhance a particular image do not aid Yu's case for patent-eligibility. As the Federal Circuit concluded in *BSG Tech*, which found that a patent related to indexing information in wide access databases claimed ineligible subject matter, "[t]hese benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure." *BSG Tech*, 899 F.3d at 1288. None of the purported benefits for digital photography alleged in the complaint, *see, e.g.*, AC ¶ 10; SC ¶ 12, or in the '289 specification or claims contribute to patentability because they are attributable to the abstract idea of using multiple images to enhance one image, and not anything substantially beyond that.

The other elements of the patent are all well-understood, routine and conventional in themselves, and ordered in a conventional manner. The record from the patent prosecution notes that earlier patents had disclosed multiple image sensors "closely positioned with respect to a common plane with reference to an image target, with lenses mounted in front of all sensors," "individual A/D conversion circuitry," "a digital image processor," and "image memory." Dkt. No. 44-1 at 4-5. While the "mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional," *Berkheimer*, 881 F.3d at 1369, in combination with all the other evidence, a motion to dismiss is proper on this record. *See Aatrix*, 882 F.3d at 1128 ("There are concrete allegations in the second amended complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity. There are also concrete allegations regarding the claimed combination's improvement to the functioning of the computer."); *BSG Tech*, 899 F.3d at 1291 ("Here, the only alleged unconventional feature of BSG Tech's claims is the requirement that users are guided by summary comparison usage information or relative historical usage information. But this simply restates what we have already determined is an abstract idea."). "There is, in short, nothing 'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas." *InvestPic*, 898 F.3d at 1170.

### C. PREEMPTION

While the failure of claim 1 to survive the two-prong inquiry under *Alice* is enough to warrant dismissal of the complaint, the Court also finds the scope of potential preemption to weigh against patent eligibility. *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 752 (Fed. Cir. 2019) ("Preemption is sufficient to render a claim ineligible under § 101, but it is not necessary."). Yu contends that "virtually all dual-lens cameras on the market today use the techniques claimed in the '289 Patent." AC ¶ 12; SC ¶ 14. In addition, the final limitation in claim 1 of the '289 patent is that the digital image processor produces an image "from said first digital image enhanced with said second digital image." Dkt. No.1-1 at 10:54-58. As a result, while the '289 patent's specification is replete with discussions of how the patent increases resolution and dynamic range, *id.* at 1:66-2:16, and mentions noise removal and color correction,

12

*id.* at 10:13-16, the AC, for example, alleges infringement through iPhone features such as "improved digital zoom, 'portrait mode,' 'portrait lighting,' and Face ID." AC ¶ 24. These allegations underscore the breadth of potential preemption Yu envisions, which further supports a finding of ineligibility.

## CONCLUSION

Because the '289 patent is directed to an abstract idea and does not add an inventive concept, the AC and SC are dismissed. In light of the plain language of the claims in the patent, the Court has substantial doubt that Yu can amend around this problem. Even so, the Court cannot say that any amendment would necessarily be futile, and so plaintiffs may file amended complaints by July 23, 2019. *See Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))). Failure to meet that deadline will result in dismissal with prejudice under Rule 41(b). Defendants' motions to dismiss the claims for willful infringement are denied without prejudice as moot.

**IT IS SO ORDERED.**

Dated: July 2, 2019

JAMES DONATO
United States District Judge

13