COOLEY LLP
Heidi Keefe (176960)
(hkeefe@cooley.com)
Lowell D. Mead (223989)
(lmead@cooley.com)
Priya B. Viswanath (238089)
(pviswanath@cooley.com)
Dena Chen (286452)
(dchen@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
Phillip Morton (*pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania Avenue
NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

*Attorneys for Defendant*
*Apple Inc.*

ROPES & GRAY LLP
James R. Batchelder (CSB: 136347)
(james.batchelder@ropesgray.com)
David S. Chun (CSB: 315958)
(david.chun@ropesgray.com)
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA  94303-2284
Tel:  650-617-4000
Fax: 650-617-4090


ROPES & GRAY LLP
Scott Taylor (*pro hac vice*)
(scott.taylor@ropesgray.com)
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199
Tel:  617-951-7013
Fax: 617-951-9000

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd. and*
*Samsung Electronics America, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| YANBIN YU and ZHONGXUAN ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:18-cv-06181-JD<br><br>**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Date:  September 12, 2019<br>Time: 11 A.M.<br>Courtroom:  11, 19th Floor<br>Judge: Hon. James Donato<br>Trial Date:  July 13 / August 17, 2020 |
| YANBIN YU and ZHONGXUAN ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Case No. 3:18-cv-06339-JD |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NOS.** 3:18-cv-06181; 3:18-cv-06339-JD

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................... 1

II. BACKGROUND OF THE TECHNOLOGY .......................................................................... 1

III. OVERVIEW OF THE '289 PATENT.................................................................................... 3

IV. THE PROPER CONSTRUCTION OF THE DISPUTED TERMS ....................................... 5

      A.   "image sensor" (Claim 1)........................................................................................... 5

          1.   The Specification Disclaims Mosaic Filter Image Sensors ................................. 5

          2.   Defendants' Construction Incorporates the Disclaimer; Plaintiffs' Construction Ignores It ........................................................................................................... 8

      B.   "[image sensor] sensitive to [a/said] full region of visible color spectrum" (claims 1, 2) .............................................................................................................. 12

      C.   "closely positioned with respect to a common plane" (claim 1) .............................. 14

      D.   "first image [produced by said first image sensor]" and "second image [produced by said second image sensor]" (claim 1) .................................................. 16

      E.   "Digitizing" (claim  1) and "digitized" (claim 4) ...................................................... 17

      F.   Plaintiffs: "first and second intensity image(s)" / Defendants: "intensity image" (claim 1) ................................................................................................... 17

      G.   "Digital image(s)" / "image memory" / "digital image processor" ........................... 18

      H.   "producing a resultant digital image from said first digital image enhanced with said second digital image" (claim 1)................................................................ 19

      I.   "integrated" (claim 4) ............................................................................................... 19

V. CONCLUSION...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Diabetes Care Inc.*,
   696 F.3d 1142 (Fed. Cir. 2012) ............................................................................................. 8

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
   651 F.3d 1318 (Fed. Cir. 2011) ........................................................................................ 10, 11

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ............................................................................................. 9

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ........................................................................................... 15

*Chicago Bd. Options Exchange, Inc. v. Int'l Securities Exchange, LLC*,
   677 F.3d 1361 (Fed. Cir. 2012) ......................................................................................... 6, 8

*David Netzer Consulting Eng'r LLC v. Shell Oil Co.*,
   824 F.3d 989 (Fed. Cir. 2016) .............................................................................................. 5

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
   435 F.3d 1366 (Fed. Cir. 2006) ........................................................................................... 16

*Fenner Invs. v. Cellco P'ship*,
   778 F.3d 1320 (Fed. Cir. 2015) ........................................................................................... 10

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ........................................................................................... 14

*GPNE Corp. v. Apple Inc.*,
   830 F.3d 1365 (Fed. Cir. 2016) ............................................................................................. 7

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014) ........................................................................................... 15

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017) ........................................................................................... 11

*Indacon, Inc. v. Facebook, Inc.*,
   824 F.3d 1352 (Fed. Cir. 2016) ............................................................................................. 9

*InterDigital Commc'ns LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318 (Fed. Cir. 2012) ........................................................................................... 10

*Kara Tech. Inc. v. Stamps.com Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009).................................................................................. 11, 13

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008).................................................................................. 14, 19

*Openwave Sys., Inc. v. Apple Inc.*,
    808 F.3d 509 (Fed. Cir. 2015)........................................................................................ 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)...................................................................................... 10

*Nautilus, Inc., v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2015)..................................................................................................... 6, 7

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
    778 F.3d 1021 (Fed. Cir. 2015).................................................................................... 6, 7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005).................................................................................... 5, 11

*Poly-America, L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016).................................................................................... 7, 10

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013)......................................................................................... 6

*Retractable Techs., Inc. v. Becton, Dickson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011)...................................................................................... 10

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
    497 F.3d 1262 (Fed. Cir. 2007)........................................................................................ 7

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013)............................................................................. 11, 13, 15

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015)...................................................................................... 14

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)................................................................................. 11, 12

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016)........................................................................................ 8

*Wegner Mfg., Inc. v. Coating Mach. Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001)...................................................................................... 10

*X One, Inc. v. Uber Techs., Inc.*,
  No. 16-CV-06050-LHK, 2017 WL 3581184 (N.D. Cal. Aug. 18, 2017) (Koh, J.)............... 16

**Statutes**

35 U.S.C. § 112........................................................................................................................ 15

**Other Authorities**

U.S. Patent No. 6,611,289.....................................................................................................*passim*

Apple Inc. (Case No. 3:18-cv-06181) and Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (Case No. 3:18-cv-06339) (collectively, "Defendants") respectfully submit this Responsive Claim Construction Brief.

## I.     INTRODUCTION

The asserted claims of the '289 patent recite generic and conventional digital camera components to implement an abstract idea, as the Court has appreciated.  (Dkt. No. 59.)[1] Consequently, most of the claim language has a well-understood ordinary meaning and does not require construction.  The only significant claim construction issue relates to explicit disclaimers in the specification, which limit the claimed invention to certain types of conventional image sensor components.  Plaintiffs, however, are attempting to back out of the promises they made to the public and recapture the claim scope they explicitly disavowed.  The Court should hold Plaintiffs to their word and construe the claim language consistent with the specification's disclaiming statements and extensive on-point Federal Circuit precedent.

## II.     BACKGROUND OF THE TECHNOLOGY

The '289 patent pertains generally to digital cameras. (Dkt. No. 1-1.)  In a digital camera, visible light is focused by a lens onto an image sensor that converts light photons into analog signals.  Those analog signals are then converted into digital data by an analog-to-digital converter.  The digital data can then be processed and stored for later retrieval and display.  (*See* Declaration of Dr. Aggelos K. Katsaggelos ("Katsaggelos Decl."), attached hereto as Exhibit 1, ¶¶ 28-31.)

### A.     The Visible Color Spectrum

The visible color spectrum refers to the portions of the electromagnetic spectrum that humans are able to perceive visually—*i.e.*, visible light.  The following graphic shows the visible color spectrum, which spans approximately the 400-700 nm wavelengths of the spectrum:



---

[1] Unless otherwise noted, all docket references are to *Yu v. Apple Inc.*, Case No. 18-cv-06181.

(Katsaggelos Decl. ¶ 39.) When a person perceives the color red, for example, light is reaching the eye with wavelengths in approximately the 625-700 nm range. (*See id.* ¶¶ 40-42.) White light, such as sunlight, is composed of light spanning all wavelengths of the visible spectrum in roughly equal proportion. (*Id.* ¶ 43.)

### B.    Image Sensors

Digital cameras use image sensors to sense photons and convert them to electrical signals. The photosensitive surface of an image sensor is divided into discrete elements, commonly referred to as cells or pixels, that convert light energy into an electrical signal. (Katsaggelos Decl. ¶ 34.) The charge accumulated at each pixel is proportional to the amount of light received at the pixel. The greater the light intensity, the greater the accumulated charge, and the larger the value of the electric signal output by that pixel. (*Id.* ¶¶ 35-36.) The pixel itself has no inherent ability to discern colors. The electric signal output by each pixel thus represents the amount of light received by the pixel at all wavelengths that reach it. (*See id.* ¶¶ 44, 49.)

Two basic types of image sensors known in the prior art are relevant here: (1) monochromatic image sensors, and (2) mosaic-filtered image sensors.[2]

**Monochromatic Image Sensors.** A monochromatic image sensor provides either a grayscale image or an image representing only a portion of the visible color spectrum.

A black-and-white ("B/W") image sensor is a monochromatic image sensor that generates a grayscale image by allowing all wavelengths of light in the visible spectrum to reach its photosensitive surface. (Katsaggelos Decl. ¶¶ 44-45.) A monochromatic image sensor can also employ a filter that blocks a portion of the visible spectrum and, unlike a B/W image sensor, allows a portion of the spectrum, *e.g.*, a single color, to reach its photosensitive surface. (*Id.* ¶¶ 46-47.) For example, a uniform red filter permits only red light (in roughly the 625-700 nm range) to pass through to the image sensor pixels. (*Id.* ¶ 49.)

---

[2] Plaintiffs' proffered expert, Dr. Castleman, acknowledges that "[a] person of ordinary skill in the art" (*i.e.*, a person in January 1999 with relevant experience) would have understood that "monochromatic sensors . . . are a subset of image sensors." (Dkt. No. 56-1 ¶ 16.)

It is possible to generate a full-color digital image using three separate images from three individual single-color monochromatic image sensors, such as by combining the outputs of three monochromatic image sensors that sense red, green, and blue, respectively, to form a three-value vector for each pixel in the combined digital image. (*Id.* ¶¶ 48-49; *see also id.* ¶¶ 54, 56.) The generation of full-color digital images from three single-color monochromatic image sensors was well-known in the art prior to the '289 patent. (*See id.* ¶ 49 (citing Ex. M, 7:66-8:9).)

**Mosaic Filter Image Sensors.** Instead of using three separate monochromatic image sensors, a single mosaic-filtered sensor can capture multiple colors (*e.g.*, red, green, and blue) to obtain a full-color image. (Katsaggelos Decl. ¶ 50.) A mosaic-filtered image sensor uses a color filter array ("CFA") comprised of an array of different colored filters (*e.g.*, red, green, and blue) in repeating color patterns coated on the image sensor. (*Id.* ¶¶ 50-51.) The well-known Bayer filter, patented by Kodak engineer Bruce Bayer in the 1970s, is an example of a mosaic CFA:



Each individual color filter of the mosaic aligns with an individual pixel of the image sensor, such that each pixel measures the intensity of light from the portion of the visible spectrum passing through the filter. (*Id.* ¶¶ 50-51; *see also id.* ¶¶ 52-53.) Using an algorithm, the red, green, and blue intensity values from the image sensor pixels can be interpolated to determine the missing values representing the other regions of the color spectrum for each pixel. (*Id.* ¶ 55.)

### III.    OVERVIEW OF THE '289 PATENT

The '289 patent purports to provide a "generic solution" that employs multiple image sensors in a digital camera. ('289 patent at 2:3-7.) The patent's Background of the Invention section notes that image sensors with mosaic filters were known in the prior art. (*Id.* at 1:50-65, Fig. 1.) The patent states that the use of multiple monochromatic prior art image sensors without mosaic filters distinguishes the purported inventions from the prior art: "One of the distinctions of the present inventions from prior arts is that the image sensors used herein are monochromatic, namely none of the image sensors are coated with a mosaic of selectively transmissive filters in

pixel-based registration." (*Id*. at 5:5-9.) The patent explains that monochromatic image sensors have "a lot of advantages" over mosaic-filter image sensors, including "the full use of the sensor resolutions" and elimination of the "expensive process" of coating an image sensor with a mosaic filter, among others. (*Id*. at 2:50-57, 5:9-13.) The purported invention uses multiple monochromatic image sensors to create multiple images and then "enhance" one image with another. (*Id*. at Figs. 3, 8; 10:6-17, 10:54-58.)

Another key aspect of the patent is the use of at least one monochromatic image sensor that has a full transparent filter or no filter at all, so that this image sensor senses the full range of the visible color spectrum: "What sets the present invention fundamentally apart from existing technologies is the use of the black-and-white intensity image from the image sensor with a full transparent filter or no filter at all." (*Id*. at 10:18-21.)

The embodiment in Figure 3 (as annotated below with color on each image sensor), illustrates these two aspects of the "present invention[s]":



The first three monochromatic image sensors (*i.e.*, **302**, **304**, and **306**) are integrated with uniform color filters such that they are responsive to only red, green, and blue light, respectively. (*See id*. at 5:14-22.) The fourth monochromatic image sensor, "B/W sensor **308**," is a black-and-white ("B/W") image sensor because it is "not specifically coated with a [uniform] color filter" but rather has a "full transparent [filter] allowing all components of visible light to pass through." (*Id*. at 5:28-40, 9:19-20.)

## IV.    THE PROPER CONSTRUCTION OF THE DISPUTED TERMS

### A.    "image sensor" (Claim 1)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "photosensitive device that is capable of sensing an image and that is not coated with a mosaic of selectively transmissive filters in pixel-based registration" | "A photosensitive device comprising a plurality of photocells, arranged in an array, that react to light reflected from a scene and translate the strength of that light into an analog signal." |

As discussed in Section II.B, *supra*, there are two relevant types of image sensors: monochromatic and mosaic-filtered.  Both types are basic, conventional components of digital cameras that were known prior to the '289 patent.[3]  The '289 patent expressly states that its purported invention uses only monochromatic sensors, and disavows use of mosaic-filtered sensors.  Specifically, the patent distinguishes "the present inventions from prior arts" on the basis that they exclude the use of image sensors that are "coated with a mosaic of selectively transmissive filters in pixel-based registration." ('289 patent at 5:5-9.)  The specification confirms this disavowal by repeatedly criticizing mosaic-filtered image sensors as "expensive" and low-resolution, and by touting the advantages of sensors that do not use mosaic filters.  (*Id*. at Abstract, 1:62-65, 2:50-65, 6:66-7:3.)  Indeed, none of the embodiments uses mosaic-filtered image sensors.

Defendants' proposed construction reflects this disclaimer verbatim from the specification. Plaintiffs', on the other hand, does not and improperly expands the scope of the claims to cover the subject matter that was expressly disclaimed (*i.e.*, mosaic-filtered image sensors).

### 1.    The Specification Disclaims Mosaic Filter Image Sensors

"[I]f the specification reveals an intentional disclaimer or disavowal of claim scope by the inventor, then the inventor's intention as expressed in the specification is regarded as dispositive." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 994 (Fed. Cir. 2016) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)).  The '289 patent specification expressly disclaims the use of image sensors coated with mosaic filters:

[3] *See* Katsaggelos Decl. ¶¶ 45-52 and Exs. D, I, J, K, L, M, N; Dkt. No. 56-1 (Castleman) ¶ 16 (noting that a "person of ordinary skill in the art" at the time of the claimed invention would have understood that "monochromatic sensors . . . are a subset of image sensors.").

> One of the ***distinctions of the present inventions from prior arts*** is that the ***image sensors*** used herein are ***monochromatic***, ***namely none of the image sensors are coated with a mosaic of selectively transmissive filters in pixel-based registration.*** Practically, using monochromatic image sensors rather than a color image sensor (which is coated with the selectively transmissive filters) has a lot of advantages. As described above, one of the obvious ones is the full use of the sensor resolutions.

('289 patent at 5:5-13 (emphasis added).)  This passage makes clear that the purported inventions use only monochromatic image sensors and not mosaic-filtered image sensors, *i.e.*, image sensors that are "coated with a mosaic of selectively transmissive filters in pixel-based registration."  This passage goes on to discuss the "advantages" of using monochromatic image sensors as opposed to sensors coated with selectively transmissive filters (*i.e.*, mosaic filters).

This is the clearest form of disclaimer.  The Federal Circuit consistently finds "disavowal or disclaimer based on clear and unmistakable statements by the patentee that limit the claims, such as 'the present invention includes . . .,' or 'the present invention is . . .,' or 'all embodiments of the present invention are . . . .'"  *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) (citing cases).  When a patent "describes the features of the 'present invention' as a whole," the patent alerts the reader that "this description limits the scope of the invention."  *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013).  And "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."  *Chicago Bd. Options Exchange, Inc. v. Int'l Securities Exchange, LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012) (citation omitted).  Thus, where the '289 patent claims recite an "image sensor," the specification deliberately excludes the use of image sensors that are coated with a mosaic of selectively transmissive filters. Defendants' construction of the term "image sensor" captures this disclaimer verbatim from the specification.

Extensive Federal Circuit precedent confirms that the specification here disclaims claim scope.  In *Pacing Technologies*, for example, the specification stated that "objects and features of the present invention are accomplished, as embodied and fully described herein, by a repetitive motion pacing system that includes . . . a data storage and playback device adapted to producing

the sensible tempo." 778 F.3d at 1025. The Federal Circuit found that this statement "clearly and unmistakably" limited the claims to "a repetitive motion pacing system having a data storage and playback device that is adapted to producing a sensible tempo." *Id.*

Similarly, in *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, the specification stated that "an important feature of the present invention" was that the claimed lift motors operated by "pushing forces . . . in contrast to conventional bed frames in which lift motors exert a pulling force against the frame . . . ." 497 F.3d 1262, 1270 (Fed. Cir. 2007). The Federal Circuit found that the patent thereby "disclaims motors that use pulling forces" such that the claims were limited to motors applying pushing forces because the "inventor makes clear that this attribute of the invention is important in distinguishing the invention over the prior art." *Id.*

Here, the '289 patent specification contains a deliberate disclaimer that is even stronger and more explicit than in the above-cited cases. The specification emphatically distinguishes "the present invention*s*" of the '289 patent—that is, all of its purported inventions—from the prior art by the use of "monochromatic" image sensors, explaining that "none of the image sensors are coated with a mosaic of selectively transmissive filters in pixel-based registration." ('289 patent at 5:5-9.) The specification goes on to explain the "advantages" the purported inventions achieve by not using mosaic filters. (*Id.* at 5:9-13.) As Defendants' expert, Dr. Katsaggelos, explains, a person of ordinary skill in the art would have recognized that Plaintiffs, with this passage, "intended to exclude image sensors coated with mosaic color filters from the scope of the claimed invention." (Katsaggelos Decl. ¶¶ 82-83.) This passage, standing alone, limits the claims to image sensors that do not use mosaic filters, as Defendants' construction reflects. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016) (affirming the district court's construction where "one sentence" in the specification that described "the invention" limited the claims).

The remainder of the specification confirms Plaintiffs' deliberate intent to exclude the use of image sensors with mosaic filters. (*See* Katsaggelos Decl. ¶¶ 83-86.) Where "the specification distinguishes or disparages prior art based on the absence of that feature," the patentee should be found to have disclaimed that feature. *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). Here, the '289 patent specification repeatedly disparages image sensors

with mosaic filters. For example, according to the patent, the use of mosaic color filters results in "significantly reduced" resolution, and mosaic filters require an "expensive process of coating" and a "micro-lenses process." ('289 patent at 1:62-65, 2:50-65.) The patent thereby purports to disclose a digital camera that produces high-quality images "without using expensive image sensors and optics." (*Id.* at Abstract.) Using multiple monochromatic image sensors, as in the claimed invention, also allows for "independent control of each of the image sensors," which is "not possible or could be [a] complicated procedure in a single sensor coated with a mosaic of selectively transmissive filters." (*Id.* at 6:66-7:3.) The patent's repeated criticisms of image sensors coated with mosaic filters further demonstrate Plaintiffs' intent to exclude such image sensors from the scope of the claimed invention. *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513-17 (Fed. Cir. 2015) (finding that "the specification of the patents-in-suit is rife with remarks that disparage and, therefore, disclaim mobile devices that incorporate computer modules"); *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149-50 (Fed. Cir. 2012) (holding that "electrochemical sensor" excluded cables and wires based on "disparaging remarks" about the prior art in the specification); *Chicago Bd. Options Exchange*, 677 F.3d at 1372 (holding that the specification's "repeated derogatory statements" about traditional floor-based trading constituted "a disavowal of that subject matter from the scope of the Patent's claims").

Consistent with these teachings, every disclosed embodiment uses monochromatic image sensors. No embodiment uses mosaic filters. (*See, e.g.*, '289 patent at 2:39-49, 2:66-3:10, 5:14-40, 7:36-46, 10:17-21.) Indeed, "image sensors without selectively transmissive filters *must be used* in the disclosed 'inventions' to achieve the described advantages." (Katsaggelos Decl. ¶ 82) (emphasis added). *See also Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) ("the patentee's choice of preferred embodiments can shed light on the intended scope of the claims.") (citation and internal quotations omitted).

### 2. Defendants' Construction Incorporates the Disclaimer; Plaintiffs' Construction Ignores It

The parties agree that an "image sensor" is a "photosensitive device." Defendants' construction, however, properly accounts for the specification's disclaimer, while Plaintiffs'

construction does not. (*See* Katsaggelos Decl. ¶ 76.) Under Defendants' construction, "image sensor" is broadly defined as any photosensitive device capable of sensing an image, so long as the device does not violate the disclaimer's prohibition of being "coated with a mosaic of selectively transmissive filters in pixel-based registration." Plaintiffs fail to demonstrate any inaccuracy in Defendants' construction and fail to demonstrate support for their construction.

First, Plaintiffs argue misleadingly that their construction is consistent with the patent's description of a "typical image sensor" that uses a mosaic color filter while Defendants' construction excludes these image sensors. (Open. Br. at 7 (quoting '289 patent at 1:50-57).) In so arguing, Plaintiffs neglect to mention that their cited passage is from the introductory "Background of the Invention" section describing a typical prior art mosaic-filtered image sensor. ('289 patent at 1:50-57; *see also* Katsaggelos Decl. ¶¶ 87-89.) As the patent explains later when describing the purported invention, a key distinction of the "present inventions over the prior arts" is to *not* use mosaic-filtered image sensors, as discussed above. (*Id*. at 5:5-9.)

Second, Plaintiffs improperly attempt to use claim differentiation to negate their disclaimer. They argue that limiting image sensors to "monochromatic" image sensors would render redundant the limitations of non-asserted claims 20 and 26 reciting that "image sensors are monochromatic." (Open. Br. at 7-9.) But there is no such redundancy here. Unlike claim 1 (which requires two image sensors), claims 20 and 26 require *four* image sensors, among other things. The doctrine of claim differentiation does not apply where, as here, "the claims are not otherwise identical in scope." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1238 (Fed. Cir. 2016) (quoting *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016)). Plaintiffs' identified limitations of Claims 20 and 26 also both recite additional requirements, namely "wherein said four image sensors are monochromatic *and identical*" (claim 20) and "wherein said three image sensors and said fourth image sensors are monochromatic *and identical in resolution*" (claim 26) that demonstrate even the individual limitations themselves have different scope. Claim differentiation does not apply because the "monochromatic" limitation does not differentiate any claims that would be "otherwise identical in scope." *Apple*, 842 F.3d at 1238.

Moreover, even if the presumption of claim differentiation applied here (which it does not), it would be rebutted by the specification's disclaimer.  The doctrine of claim differentiation "cannot enlarge the meaning of a claim beyond that which is supported by the patent documents." *Fenner Invs. v. Cellco P'ship*, 778 F.3d 1320, 1326-27 (Fed. Cir. 2015).  It is well-settled that claim differentiation is a guide, not a rigid rule, and that "any presumption created by the doctrine of claim differentiation will be overcome by a contrary construction dictated by the written description or prosecution history."  *Id.* at 1327 (quoting *Retractable Techs., Inc. v. Becton, Dickson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)).  "[C]laim differentiation does not serve to broaden claims beyond their meaning in light of the patent as a whole, and it cannot override clear statements of claim scope found in the specification and prosecution history." *Poly-America*, 839 F.3d at 1137.  As Plaintiffs' own cited authority (*see* Op. Br. at 7-8) recognizes, any presumption created by claim differentiation "can be overcome by strong contrary evidence such as . . . a clear disavowal of claim scope."  *InterDigital Commc'ns LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012); *see also Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1232 (Fed. Cir. 2001) (recognizing claim terms are not given ordinary meaning if used differently by the inventor); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906-08 (Fed. Cir. 2004) (acknowledging cases where disclaimer dictated a narrow claim construction).

As the foregoing Federal Circuit precedent makes clear, a specification's clear disclaimer trumps any argument based on claim differentiation.  Thus, even if a recitation of a "monochromatic" image sensor in non-asserted claims 20 and 26 somehow "would become redundant or superfluous" by construing "image sensor" to exclude mosaic filters, the term "image sensor" must still be construed with the "construction dictated by the written description." *Fenner*, 778 F.3d at 1326-27 (citation omitted).  In other words, even if claims 20 and 26 might imply that an image sensor need not be "monochromatic," "the specification[] tell[s] us otherwise," as it "expressly recite[s] that 'the invention'" uses image sensors without a mosaic filter, "expressly distinguish[es] the invention from the prior art based on this feature, and only disclose[s] embodiments that are expressly limited" to monochromatic image sensors. *Retractable Techs.*, 635 F.3d at 1305; *see also Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651

F.3d 1318, 1337 (Fed. Cir. 2011) (construing "messages" to require addresses based on the specification, despite a "claim differentiation argument" based on a dependent claim that "adds the limitation that the message include addresses" because the "patent specification overrides its effect"); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1325-26 (Fed. Cir. 2017) (disputed claim terms "should be construed to exclude long-term or permanent storage" based on specification disclaimer, despite claim differentiation).

Finally, Plaintiffs contend that there is no "clear and mistakable disclaimer," but the intrinsic record dictates otherwise. (Open. Br. at 9.) Indeed, it is hard to imagine a clearer and more deliberate disclaimer than this one. The declaration of Plaintiffs' expert, Dr. Castleman, does not help Plaintiffs overcome the disclaimer. (Open. Br. at 6-7, citing Dkt. 56-1 ¶ 11.) The declaration's cursory discussion of the "image sensor" term fails to address the full text of the specification's disclaimer, and also ignores the specification's disparagement of mosaic-filtered sensors and descriptions of monochromatic sensors used in every embodiment. (Dkt. 56-1 ¶¶ 14-16.) Instead, Plaintiffs' expert relies on the specification's background description of mosaic-filtered image sensors (*see id.* ¶ 15), which the patent disavows. This opinion therefore "deserves no weight." *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1210 (Fed. Cir. 2013) (rejecting opinions that were "conclusory and incomplete," "lack any substantive explanation tied to the intrinsic record," and "appear to conflict with the plain language of the written description"). A "court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Intellectual Ventures*, 870 F.3d at 1326 n.1 (quoting *Phillips*, 415 F.3d at 1318); *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("expert testimony cannot overcome more persuasive intrinsic evidence.").

The sole case Plaintiffs rely upon, *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012), is inapposite. *Thorner* stands merely for the unremarkable proposition that claim terms must be given their plain and ordinary meaning absent clear lexicography or disavowal. *See id.* 1367-68. In *Thorner*, the district court erred in concluding that the specification implicitly defined "attached" to mean "affixed to an exterior surface" where the

specification used the term "attached" to refer to embodiments featuring attachment to an exterior surface, while using the term "embedded" to refer to attachment to an interior surface. The Federal Circuit found that the mere fact that the specification never uses the word "attached" when referring to interior attachment did not "rise to the level of either lexicography or disavowal." *Id.* at 1368. Here, by contrast, the '289 specification provides a clear statement of disavowal, extensive criticism of the disavowed feature (the use of mosaic filters) and praise for the claimed invention for *not* using the disavowed feature (using monochromatic image sensors without mosaic filters). (*See* '289 patent at 1:50-65, 2:50-65, 5:5-13, 6:66-7:3.)

**B.    "[image sensor] sensitive to [a/said] full region of visible color spectrum" (claims 1, 2)**

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "[image sensor] that does not use any filter or uses a filter that does not obstruct any portion of the visible color spectrum, such that the entire image sensor is responsive to the full visible color spectrum" | "[The image sensor] not [being] integrated with a transmissive filter that causes the entire image sensor to be responsive to only a certain color region of the visible color spectrum." |

The purported invention of the '289 patent requires at least one monochromatic image sensor that is sensitive to the full visible color spectrum, *i.e.*, a conventional black-and-white (B/W) image sensor. *See* Section II.B and III, *supra*. The specification imposes this requirement through a second clear disclaimer: "What sets the *present invention fundamentally apart from existing technologies* is the use of the black-and-white intensity image from the *image sensor with a full transparent filter or no filter at all*. The *B/W image sensor* can capture full information including details that may be missed by those color image sensors." ('289 patent at 10:17-22 (emphasis added).) The "present invention" thus requires the use of an "image sensor with a full transparent filter or no filter at all" (*i.e.*, a "B/W image sensor") and disavows any embodiment that does not employ one. The same Federal Circuit precedent cited above for the "image sensor" disclaimer applies with equal force here.

The asserted claims embody this second disclaimer by reciting that at least one image sensor is sensitive to a "full region of visible color spectrum." This claimed image sensor is responsive to the "full region of visible spectrum" because it uses no filter or uses a filter that does not obstruct any portion of the visible spectrum, as specified by the second disclaimer. (*See*

Katsaggelos Decl. ¶¶ 91-97, 100.)    Defendants' proposed construction properly reflects this disclaimer consistent with the claim language.

The patent's embodiments further confirm the disclaimer.  The specification teaches that "one of the image sensors can be made to be responsive to a full range of the visible color spectrum, which may include the use of a full transparent filter." ('289 patent at 9:63-66.)  The specification also reflects the disclaimer in the form of image sensor **308**, which is a black-and-white ("B/W") sensor: "B/W sensor **308**, however, is not coated with any color filters . . . ."  (*Id*. at 9:19-20.) Image sensor **308** is equipped with: (1) "a full transparent" filter "allowing all components of visible light to pass through" (*id*. at 5:28-32;, 9:63-66, 10:18-21); (2) a "band filter" that "obstructs anything beyond the visible light spectrum" (*id.* at 5:34-40, 6:3-6); or (3) "no filter at all" (*id.* at 5:33-35, 10:18-21).   The specification subsequently emphasizes that this disclosed use of an "image sensor with a full transparent filter or no filter at all," *i.e.*, the "B/W image sensor," "sets the present invention fundamentally apart from existing technologies."  (*Id*. at 10:18-21.)

Plaintiffs' construction, on the other hand, conflicts with both disclaimers.[4]  Plaintiffs candidly proclaim that their construction "allow[s] the use of a 'mosaic of selectively transmissive filters,'" (Open. Br. at 12-13), but that directly contradicts the specification's disavowal of mosaic filters as quoted and discussed in Section IV.A.  (*See* Katsaggelos Decl. ¶¶ 101-104.)  It also ignores the second disclaimer, quoted and discussed in this section, which requires an "image sensor with a full transparent filter or no filter at all."  ('289 patent at 10:18-21.)

Even without the disclaimer issue, Plaintiffs' construction improperly rewrites and broadens the claims.  Their construction requires that the image sensor is "*not* . . . integrated with a transmissive filter that causes the entire image sensor to be responsive to *only a certain color region*."  This improperly encompasses an image sensor sensitive only to *multiple portions* of the visible color spectrum (such as a two-color mosaic filter image sensor) but not the *full* region, of the visible color spectrum.  This claim scope, however, not only contradicts the plain language of

---

[4] Plaintiffs' brief does not cite the Castleman declaration for this term.  In any event, the Castleman declaration on this term merits no weight because it ignores the specification's disclaimer stating the patent's invention requires the use of a B/W sensor as discussed above. (*See* Dkt. No. 56-1 ¶¶ 17-20.)  *SkinMedica*, 727 F.3d at 1210; *Kara Tech.*, 582 F.3d at 1348.

the claims, which expressly requires sensitivity to the "full region," but also runs afoul of the specification's second disclaimer, as discussed above.

Similarly, Plaintiffs' proposed negative construction that the image sensor is not "integrated" with a transmissive filter would encompass image sensors that are *not* sensitive to the full visible color spectrum. For example, a lens above the sensor (which is not "integrated" with the sensor) could contain a filter that blocks some portion(s) of the visible spectrum. (*See id.* at 5:21-28; Katsaggelos Decl. ¶ 105.) This again is contrary to the same plain claim language that requires sensitivity to the "full region."

### C.    "closely positioned with respect to a common plane" (claim 1)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
| --- | --- |
| No construction necessary; plain meaning<br><br>Plaintiffs' construction would render the term indefinite. | "Projections [of the image sensors] from the same reference point onto the same plane being positioned sufficiently close to one another to enable registration of a first image produced by the first image sensor with a second image produced by the second image sensor, and to enable enhancement of a first image produced by the first image sensor with a second image produce by the second image sensor." |

This claim language is used according to its plain meaning and does not require construction. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). The specification's cursory discussion of this feature does not impose any different meaning (*e.g.*, '289 patent at 6:12-26, 8:30-33) and a skilled artisan reading the claim language in the context of the specification would have readily understood this claim language. (Katsaggelos Decl. ¶¶ 107-108.)

Plaintiffs' construction should not be adopted. First, it is verbose and injects a confusing jumble of unsupported and unnecessary limitations. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (claim construction "is not an obligatory exercise in redundancy," but rather "a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." (citations and quotations omitted)).

Second, Plaintiffs seek to import limitations from an exemplary embodiment in the specification, which they admit is impermissible. (Open. Br. at 3-4 (citing cases); *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("[W]e do not read limitations from the embodiments in the specification into the claims." (citation omitted)). The claim language says nothing about "projections" or positioning "to enable registration . . . and to enable enhancement," and nothing in the specification disclaims embodiments that do not contain these limitations. (*See* Katsaggelos Decl. ¶¶ 111-113.) There is, moreover, no support in the specification for the notion that enhancing a first image with a second image is possible only when the two sensors are closely positioned. Plaintiffs' construction improperly injects a functional requirement that the two image sensors are positioned "to enable enhancement" of a first image with a second image, but the claims separately recite an "enhance" function as part of their "digital image processor" element. (*See* '289 patent, claim 1; Katsaggelos Decl. ¶ 114.) And, in addition to being improper and unnecessary, Plaintiffs' use of the phrase "to enable" in their construction risks jury confusion with the legal concept of enablement under 35 U.S.C. § 112.

Third, as Defendants' expert confirms, Plaintiffs' construction would render the claims indefinite by failing to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014)). (Katsaggelos Decl. ¶¶ 109-110.) Plaintiffs seek to rewrite the claim language as "*sufficiently* close . . . *to enable registration*," which begs the question of whether the claims invoke an indefinite term of degree. Plaintiffs also contend that their construction differentiates between closely positioned "*in* a common plane" (claims 26-31) and "*with respect to* a common plane" (claims 1-25). (Open. Br. at 13.) However, Plaintiffs never explain this distinction or why it matters. Instead, Plaintiffs' construction confusingly requires "projections of the image sensors from the same reference point"— importing verbiage (e.g., "projection(s)" or "reference point") that do not appear in the specification and have no support in the intrinsic record. Plaintiffs cite the Castleman declaration, but there is no basis to import limitations from that declaration into the claims. *SkinMedica*, 727 F.3d at 1195, 1210 ("conclusory, unsupported assertions by experts as to the definition of a claim

term are not useful to a court" and "may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history" (citations and quotations omitted)).  Plaintiffs' proposed construction would only sow confusion about what the "projection of the image sensor" and the "same reference point" are supposed to be, or where the "same plane" might be located in any given scenario involving a digital camera.  (Katsaggelos Decl. ¶ 110.)  Plaintiffs' analogy to a flashlight casting a shadow on the wall (Open. Br. at 14) provides no further clarity—if the flashlight is the "imaging target," is the person the image sensor?  What is the wall?  Who or what casts the shadow?  *See X One, Inc. v. Uber Techs., Inc.*, No. 16-CV-06050-LHK, 2017 WL 3581184, at \*11 (N.D. Cal. Aug. 18, 2017) (Koh, J.) (rejecting proposed construction because "it would be confusing and unhelpful to the jury").

   **D.   "first image [produced by said first image sensor]" and "second image [produced by said second image sensor]" (claim 1)**

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
| --- | --- |
| "first intensity image" and "second intensity image" | "First and second analog representations of light reflected from the same scene." |

   Defendants' construction corrects an antecedent basis defect.  Claim 1 of the '289 patent recites, in pertinent part: "said first image sensor producing a *first image* and said second image sensor producing a *second image*;" and "an analog-to-digital converting circuitry coupled to said first and said second image sensor and digitizing *said first and said second intensity images*."  The recitation of "said" intensity images has no antecedent basis because the claim does not previously refer to "intensity images."  However, a person of ordinary skill in the art would have understood that the claimed "first image" and "second image" refer to the claimed first and second "intensity" images.  (Katsaggelos Decl. ¶¶ 116-118.)  *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) (antecedent basis may be present "by implication").  In fact, Plaintiffs agree with this.  (Open. Br. at 17 ("[I]t is apparent that the 'first and second image intensity images' merely refer back to the 'first and second images' of claim 1 . . . .").)  Defendants' construction should be adopted.  (*See* Katsaggelos Decl. ¶ 119.)

   Plaintiffs' proposed construction for the two terms should not be adopted for at least three reasons.  First, it would leave the claims indefinite for lack of antecedent basis.  Second, it is

unsupported.  The asserted claims do not refer to a "scene," and the specification does not narrowly define or limit the claimed images (which are produced by sensors inside the camera) based on whatever scene or scenes might be present outside of the camera.  Third, Plaintiffs' construction would render the claims indefinite because it creates confusion over what constitutes "the same scene."  In fact, the '289 patent indicates that the same coordinates in first and second digital images "do *not* correspond to the same spatial point in a scene."  ('289 patent at 8:1-4 (emphasis added).)  Depending on the unexplained meaning of "scene," it could be said that the two images in this context do not "represent the same scene."  (*See* Katsaggelos Decl. ¶ 154.)

### E.    "Digitizing" (claim 1) and "digitized" (claim 4)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| No construction necessary; plain meaning.  If construction is necessary, "converting into digital form." | "Converting from analog form into numerical form" |

The '289 patent uses "digitizing" / "digitized" with the same ordinary meaning familiar to a layperson: conversion into digital form.  (Katsaggelos Decl. ¶¶ 121-124.)  The claims and specification consistently refer to digitizing the analog output signal of the image sensor into digital form.  (*See* '289 patent at 5:40-57, 10:46-50, 11:1-5.)  Plaintiffs' construction, in contrast, improperly introduces the concept of a "*numerical* form."  Digitizing, however, is not the same as converting something into "numerical" form, and the word "numerical" does not appear in the specification.  (*See* Katsaggelos Decl. ¶¶ 125-127.)

### F.    Plaintiffs: "first and second intensity image(s)" / Defendants: "intensity image" (claim 1)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| "intensity image": "image where each pixel has a single value that represents the light intensity from the same spectral range"<br><br>"first" and "second" . . . : no further construction necessary beyond "intensity image"; plain meaning. | "First and second representations of light reflected from the same scene, each corresponding to the strength of the reactions of the photocells in the image sensors when exposed to the light." |

The substantive term at issue here is "intensity image."  Defendants properly construe this term consistent with its usage in the claims and specification, which, without exception, use the term to refer to the images derived from the monochromatic image sensors.  ('289 patent at 8:6-22 (referring to "intensity image **508**" from the black-and-white image sensor **308** as "a B/W

image"), 5:14-34, 5:59-60 ("intensity images **352**, **354**, **356** and **358**" derived from red, green, blue and full spectrum monochrome sensors **302**, **304**, **306**, and **308** respectively), 5:58-6:13 ("intensity images **412**, **414**, **416**, and **418**" derived from the output of the red, green, blue, and full spectrum monochrome sensors **402**, **404**, **406**, and **408**); Katsaggelos Decl. ¶¶ 132-135.) Because monochromatic image sensors are either uniformly limited to a certain spectral range (*e.g.*, red, green, blue) or receptive to the full visible color spectral range, it follows that each image sensor pixel has a single value that represents the light intensity from the same spectral range. (Katsaggelos Decl. ¶ 134.)

This use of "intensity image" also comports with the term's "accepted meaning in the field of digital imaging," as referring to "to monochrome images, *i.e.*, images in which the entire image can be understood to represent the amount of light intensity across the same spectral range." (*Id*. ¶¶ 130-131; *see also id.* at Ex. T at 1687 (referring to "greyscale" image of intensity values, as an "intensity image"), Ex. U at 10 (taking as input grayscale "intensity image"), Ex. V at 2-2 (defining "intensity image" as "[a]n image consisting of intensity (grayscale) values.").) Plaintiffs proffer no evidence disputing the fact that this was the customary meaning of "intensity image" in the relevant field at the relevant time. The Castleman declaration does not deny that the term had this meaning in the field and does not identify any different accepted meaning.

Plaintiffs' construction, moreover, would improperly cover representations of light from *any* image sensor, including disclaimed mosaic-filtered sensors that the patent disavows. (*See* Open. Br. at 16-17; Katsaggelos Decl. ¶ 136.) But the only "intensity image" referenced in the specification or claims is an image produced by the monochromatic sensors required by the claimed invention, consistent with the customary meaning of "intensity image" in the field. (Katsaggelos Decl. ¶¶ 130-132.) Plaintiffs' construction would also introduce confusion and render the claims indefinite because the "representation of light reflected *from the same scene*" is unclear, as discussed in Section IV.D, *supra*.

G.    **"Digital image(s)" / "image memory" / "digital image processor"**

These terms are ordinary words used with their plain meanings. (Katsaggelos Decl. ¶¶ 138-140, 143-146.) None of these terms has any apparent impact on infringement or invalidity,

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.** 3:18-cv-06181; 3:18-cv-06339-JD

and none has any special narrow meaning dictated by the '289 patent beyond the plain claim language itself. Claim construction "is not an obligatory exercise in redundancy" and none of these terms should be construed by the Court. *See O2 Micro*, 521 F.3d at 1362 (citation omitted).

Plaintiffs appear to admit that they are improperly reading in limitations from embodiments in the specification. (*See* Open. Br. at 17-18.) Plaintiffs' proposals also improperly incorporate limitations that are recited elsewhere in claim 1, making the constructions unnecessarily redundant and confusing. (Katsaggelos Decl. ¶¶ 141, 147-148.)

### H.    "producing a resultant digital image from said first digital image enhanced with said second digital image" (claim 1)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| No construction necessary; plain meaning.<br><br>Plaintiffs' construction would render the term indefinite. | "Deriving an enhanced digital image by modifying the qualities of the first digital image using the second digital image, where the first and second digital images represent the same scene." |

No construction is needed for this term, which uses ordinary words to form a phrase that a lay jury would readily understand. (*See* Katsaggelos Decl. ¶¶ 150-152.) Plaintiffs' construction would only render the claim indefinite. Plaintiffs seek to have the phrase "produc[ing]" an "enhanced" image construed to mean "modifying the qualities" of the first digital image using the second digital image. But the claims do not recite "qualities," and nothing in the specification or claims requires that the only way to achieve enhancement is by "modifying qualities." (*Id.* ¶ 153.) Moreover, Plaintiffs leave it unclear what "modifying the qualities" means. What are the "qualities," and from whose perspective is each "quality" identified? What types of "modifying" are contemplated, and is any act of "modifying" sufficient? Finally, Plaintiffs' proposal that the images must "represent the same scene" is confusing, unnecessary, not supported by the specification, and would render the claims indefinite for the same reasons discussed in Sections IV.D and F above. (*See id.* ¶ 154.)

### I.    "integrated" (claim 4)

| Defendants' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| No construction necessary; plain meaning. If construction is necessary, "combined or joined together" | "Formed on the same physical device." |

The ordinary word "integrated" in dependent claim 4 needs no construction beyond its plain and ordinary meaning, which is "combined or joined together." (Katsaggelos Decl. ¶ 156.) Nothing in the intrinsic record requires a narrower meaning. (*Id.*) Nor is Defendants' construction meaningless as Plaintiffs argue. (Open. Br. at 19.) Whether left to plain meaning or as construed by Defendants, the "integrated" term narrows the claim 1 requirement that the image sensor and A/D converter are "coupled" (which could encompass remote coupling without combining or joining together) by further requiring that they are "integrated," *i.e.*, combined or joined together. (Katsaggelos Decl. ¶¶ 156, 162-163.)

Plaintiffs' construction is unsupported. First, it improperly injects a certain manufacturing process—both items are "formed on" a physical device—that is not required (or even suggested) by the intrinsic record. (*See id.* ¶ 165.) Second, it is inconsistent with the specification. Nothing in the specification redefines "integrated" to mean "formed on the same physical device" or disclaims components that are not formed on the same physical device. (*See id.* ¶¶ 160-164.) On the contrary, in addition to implying that "integrated" can include "coated on" or "in front of," the specification also uses the term "integrated" to refer to a color filter that has been incorporated "into" the camera lens—*i.e.*, the material of the lens itself is colored. (*Id.* ¶¶ 158-159; '289 patent at 5:20-28.) Plaintiffs' construction is thus incorrect because it improperly confines the term "integrated" to one particular narrow form of integration, contrary to the implication of the specification and the ordinary meaning of the word.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt their proposed constructions and reject those proposed by Plaintiffs.

Respectfully submitted,

Date: July 15, 2019                    By:  ___*/s/ Heidi Keefe*___
                                             Heidi Keefe (176960)
                                             (hkeefe@cooley.com)
                                             Lowell D. Mead (223989)
                                             (lmead@cooley.com)
                                             Priya B. Viswanath (238089)
                                             (pviswanath@cooley.com)
                                             Dena Chen (286452)
                                             (dchen@cooley.com)
                                             COOLEY LLP
                                             3175 Hanover Street
                                             Palo Alto, CA 94304-1130
                                             Telephone: (650) 843-5000
                                             Facsimile: (650) 849-7400

                                             Phillip Morton (*pro hac vice*)
                                             (pmorton@cooley.com)
                                             COOLEY LLP
                                             1299 Pennsylvania Avenue
                                             NW, Suite 700
                                             Washington, DC 20004-2400
                                             Telephone: (202) 842-7800
                                             Facsimile: (202) 842-7899

                                             *Attorneys for Defendant Apple Inc.*

                                       By:  ___*/s/ James R. Batchelder*___
                                             James R. Batchelder (No. 136347)
                                             (james.batchelder@ropesgray.com)
                                             David S. Chun (CSB: 315958)
                                             (david.chun@ropesgray.com)
                                             ROPES & GRAY LLP
                                             3 Embarcadero Center
                                             San Francisco, CA 94111
                                             Telephone: (415) 315-2310

                                             Scott S. Taylor (No. 692689)
                                             (scott.taylor@ropesgray.com)
                                             ROPES & GRAY LLP
                                             Prudential Tower, 800 Boylston St.
                                             Boston, MA 02199-3600
                                             Telephone: (617) 951-7013

                                             *Attorneys for Defendants*
                                             *Samsung Electronics Co., Ltd. and*
                                             *Samsung Electronics America, Inc.*

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from all signatories.

/s/ *Heidi Keefe*
Heidi Keefe

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 15, 2019, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1.  The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

/s/ *Heidi Keefe*
Heidi Keefe